UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>INTALCO ALUMINUM LLC,<br><br>Defendant. | CASE NO. 2:24-cv-01066-LK<br><br>ORDER GRANTING AMENDED MOTION TO ENTER STIPULATION OF SETTLEMENT |

This matter comes before the Court on Plaintiff United States of America's Unopposed Amended Motion to Enter Stipulation of Settlement. Dkt. No. 5. For the following reasons, the Court grants the United States' motion and approves the proposed stipulation of settlement.

## I. BACKGROUND

In November 2019, the United States Environmental Protection Agency ("EPA") inspected Defendant Intalco Aluminum LLC's facility in Ferndale, Washington. Dkt. No. 1 at 2. After requesting documents and information from Intalco regarding the facility pursuant to Section 114 of the Clean Air Act ("CAA"), 42 U.S.C. § 7414, EPA issued several Notices of Violation to Intalco, alleging violations of the CAA, its implementing regulations, and Intalco's permits. *Id.* at

ORDER GRANTING AMENDED MOTION TO ENTER STIPULATION OF SETTLEMENT - 1

1  2–3; *see also* Dkt. Nos. 1-1, 1-2, 1-3. Intalco fully curtailed operations at the Ferndale facility in
2  October 2020, and its parent company Alcoa Corporation announced its decision to permanently
3  close the facility in March 2023. Dkt. No. 1 at 3–4. Alcoa disclosed that it expects to incur roughly
4  $85 million in costs associated with the permanent shutdown of the Intalco facility. *Id.* at 4.

5        On July 18, 2024, the United States filed a complaint against Intalco, requesting that the
6  Court order Intalco "to take appropriate measures to mitigate the effects of its [alleged] past
7  violations" and "[a]ssess civil penalties against [Intalco] for up to the amounts provided in the
8  [CAA.]" *Id.* at 26. The United States alleged that Intalco violated (1) Section 112 of the CAA, 42
9  U.S.C. § 7412, and its implementing regulations, including applicable National Emissions
10 Standards for Hazardous Air Pollutants under 40 C.F.R. Part 63, Subparts A and LL, (2) the permit
11 provisions of Title V of the CAA, its implementing regulations, and Washington's corresponding
12 Title V operating permit program, and (3) the national ambient air quality provisions of Title I of
13 the CAA, including requirements under the Washington State Implementation Plan. Dkt. No. 2 at
14 1; *see also* Dkt. No. 1 at 1–2, 4–11.

15       On the same day, the United States filed an unopposed motion requesting that the Court
16 enter a proposed Stipulation of Settlement between the United States and Intalco to resolve the
17 United States' claims for civil penalties under Sections 110, 112, and 113 of the Clean Air Act
18 ("CAA"), 42 U.S.C. §§ 7401 *et seq.* Dkt. No. 2 at 1; *see also* Dkt. No. 2-1 (proposed stipulation
19 of settlement). Alcoa, Intalco's parent company, is also included in the settlement agreement as a
20 guarantor for Intalco's payment. Dkt. No. 2-1 at 4–5.

21       On August 19, 2024, the Court denied the United States' motion because neither the motion
22 nor the proposed settlement agreement included the facts necessary for the Court to evaluate
23 whether the proposed settlement agreement was "procedurally and substantively fair, reasonable,
24

in the public interest, and consistent with the policies of the underlying statute." Dkt. No. 3 at 2–3.[1]

The United States filed the instant amended motion on September 17, 2024. Dkt. No. 5. It represents that Intalco "has consented to the entry of the Stipulation of Settlement without further notice." *Id.* at 2.

## II.   DISCUSSION

### A.   Standard of Review

In determining whether to enter a proposed consent decree,[2] the Court must examine whether the consent decree is procedurally and substantively fair, reasonable, in the public interest, and consistent with the polices of the underlying statute. *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1152 (9th Cir. 2010); *see also Sierra Club v. North Dakota*, 868 F.3d 1062, 1068 (9th Cir. 2017). Whether a consent decree is "fair" depends on "whether the decree was both (1) the product of a procedurally fair process, and (2) substantively fair to the parties in light of a reasonable reading of the facts." *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 746–47 (9th Cir. 1995). Although the Court gives deference to a government agency's evaluation of the proposal, the Court cannot simply "rubber stamp" the parties' proposed decree. *See id.*

### B.   The Consent Decree is Fair, Reasonable, In the Public Interest, and Consistent with the Policies Underlying the CAA

The parties' proposed consent decree requires Intalco to pay $5,250,000, plus interest, to the United States within 10 days of the Court's approval of the decree. Dkt. No. 2-1 at 3. After

---

[1] The Court also indicated that Intalco needed to appear in the case. *Id.* at 3 n.4. Intalco appeared on September 3, 2024. Dkt. No. 4.

[2] "A consent decree is essentially a settlement agreement subject to continued judicial policing." *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) (internal quotation marks and citation omitted). Here, the United States asks the Court to maintain continuing jurisdiction to "interpret[] and enforc[e]" the parties' agreement, Dkt. No. 2-1 at 6, so the Court refers to the proposed settlement as a consent decree.

ORDER GRANTING AMENDED MOTION TO ENTER STIPULATION OF SETTLEMENT - 3

careful consideration, the Court finds that the proposed consent decree is fair, reasonable, in the public interest, and consistent with the policies underlying the CAA.

First, the proposed consent decree is procedurally fair. A consent decree is "presumptively valid" if it was a product of "good faith, arms-length negotiations[.]" *Oregon*, 913 F.2d at 581; *see also Washington v. United States*, No. 06-cv-05225-RJB, 2007 WL 3025843, at *6 (W.D. Wash. Oct. 15, 2007) ("In measuring procedural fairness, 'a court should ordinarily look to the negotiation process and attempt to engage its candor, openness, and bargaining balance.'" (quoting *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990)); *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3d Cir. 2003) (same)). Here, the United States represents that "[n]egotiations to resolve [its] claims . . . spanned more than two years and included multiple in-person, video, and telephonic meetings, including clients on both sides, as well as exchanges of substantive written communications between counsel on behalf of the parties." Dkt. No. 5 at 3. It also states that it "conferred with the Washington Department of Ecology and . . . the Lummi Nation[] in the early stages of negotiation before Intalco permanently shuttered its facility and surrendered its Title V permit, negating the possibility of injunctive relief." *Id.* Based on these representations, the Court is satisfied that the consent decree is procedurally fair.

Second, the proposed consent decree is substantively fair. A consent decree is substantively fair if a party "bear[s] the cost of the harm for which it is legally responsible." *United States v. Kohler Co.*, No. 20-cv-00683-PJH, 2020 WL 8910845, at *2 (N.D. Cal. Apr. 6, 2020) (quoting *Cannons Eng'g*, 899 F.2d at 87). Any evaluation of a consent decree's substantive fairness requires a "benchmark with which to compare it." *Montrose Chem.*, 50 F.3d at 746; *United States v. Chevron U.S.A. Inc.*, No. C 03-4650 CRB, 2005 WL 8179596, at *2 (N.D. Cal. Jan. 24, 2005) (applying *Montrose Chemical* to CAA consent decree). One way to "gauge the adequacy of settlement amounts to be paid by settling [potentially responsible parties] is to compare the

proportion of total projected costs to be paid by the settlors with the proportion of liability attributable to them, and then to factor into the equation any reasonable discounts for litigation risks, time savings, and the like that may be justified." *Montrose Chem.*, 50 F.3d at 747 (emphasis removed); *see also Arizona v. City of Tucson*, 761 F.3d 1005, 1012 (9th Cir. 2014) (assessment of substantive fairness includes "an appraisal of what the government is being given by the [settling party] relative to what the [settling party] is receiving" (quoting *United States v. Charter Int'l Oil Co.*, 83 F.3d 510, 515 (1st Cir. 1996)).

Here, the United States avers that it "demanded information from Intalco about the costs it would have had to incur to comply and, based on that information, used the standard EPA BEN model to calculate the economic benefit Intalco gained by not incurring those costs." Dkt. No. 5 at 5; *see also* Dkt. No. 6 at 2–3.[3] EPA determined using the BEN model that Intalco gained approximately $4.1 million in economic benefit by not incurring those compliance costs. Dkt. No. 6 at 3.[4] However, Intalco contended during settlement negotiations that "it gained a much smaller economic benefit," which the United States maintains "would have been a litigated issue at trial." Dkt. No. 5 at 5. The United States also avers that Intalco would have challenged source tests upon which some of the alleged emissions violations from 2017 to 2020 were based, resulting in "a costly battle of the experts, heightening the costs and risks [of litigation] for both sides." *Id.* The United States notes that after trial, other courts have imposed civil penalties of twice the violator's proven economic benefit. *Id.* at 6 (citing *United States v. Mun. Auth. of Union Twp.*, 929 F. Supp.

---

[3] The BEN model "is a computer program available to and utilized by EPA nationwide" to calculate the economic benefit component of a civil penalty under Section 113(b) of the CAA. Dkt. No. 6 at 2. The model calculates economic benefit by determining the amount of delayed costs (i.e., expenditures a party needs to make to bring its operations into compliance but delays making until it is compelled to do so by a regulating entity) or avoided costs (i.e., compliance expenditures a party avoids permanently by not spending when it is necessary to do so) a party enjoyed due to noncompliance. *Id.*

[4] Specifically, the EPA determined that Intalco would have incurred $559,913 in delayed costs (e.g., the hiring of a full-time environmental compliance employee and repairs to necessary components) and over $3.5 million in avoided costs (e.g., flue wall replacements and repairs that did not occur). *Id.*

ORDER GRANTING AMENDED MOTION TO ENTER STIPULATION OF SETTLEMENT - 5

800, 806, 809 (M.D. Pa. 1996); *United States v. Allegheny Ludlum Corp.*, 366 F.3d 164, 178 n.6 (3d Cir. 1994); *United States v. Bedford*, No. 2:07-cv-491, 2009 WL 1491224, at *18 (E.D. Va. May 22, 2009)). Here, the consent decree avoids the costs and risks of trial and more than recoups the full amount of Intalco's economic benefit. *Id.* at 5.

The Court finds that the civil penalty in the proposed decree is substantively fair and reasonable considering the costs and risks of litigation, the recoupment of Intalco's economic benefit, and the other statutory factors. *Montrose Chem.*, 50 F.3d at 747; *see also United States v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005) ("[I]t is not the duty of the court to determine whether 'the settlement is one which the court itself might have fashioned, or considers ideal." (quoting *Cannons Eng'g*, 899 F.2d at 84)).

Finally, the Court concludes that the consent decree is in the public interest and consistent with the applicable law. *Oregon*, 913 F.2d at 581. "A settlement should satisfactorily compensate the public for both actual and anticipated costs of remedial and response measures." *Washington*, 2007 WL 3025843, at *8 (citing *Cannons Eng'g*, 899 F.2d at 90). The public policy favoring settlement "is strengthened when a government agency charged with protecting the public interest has pulled the laboring oar in constructing the proposed settlement." *Kohler*, 2020 WL 8910845, at *2 (quoting *Montrose Chem.*, 50 F.3d at 746) (internal quotation marks omitted). As the United States maintains, the parties' proposed consent decree "imposes a civil penalty of sufficient size to effectively both punish Intalco and deter others in the regulated community from failing to comply with the CAA." Dkt. No. 5 at 6–7; *see also* 42 U.S.C. § 7401(b)(1) (providing that one of the purposes of the CAA is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population"); *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1159 (9th Cir. 2002) (noting that civil penalties under the Clean Water Act "serve, as an alternative to an injunction, to deter future

violations" (cleaned up)); *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 460 F. Supp. 2d 1185, 1190 (E.D. Cal. 2006) (same for CAA civil penalties). The Court also agrees with the United States that by "avoiding potentially complex and expensive litigation," the proposed consent decree "ensures prompt, effective vindication of the CAA's goals while also lessening burdens on litigants and the Court." Dkt. No. 5 at 7; *see also S.E.C. v. Randolph*, 736 F.2d 525, 529–30 (9th Cir. 1984) (noting that even a strong case against defendant would be costly at the expense of other investigations); *United States v. Salt River Project Agr. Improvement & Power Dist.*, No. CV 08-1479-PHX-JAT, 2008 WL 5332023, at *3 (D. Ariz. Dec. 22, 2008) ("The Court also considers the value of the Consent Decree in avoiding complex, protracted, and expensive litigation.").

Because the proposed consent decree is procedurally and substantively fair, reasonable, in the public interest, and consistent with the policies of the CAA, the Court grants the United States' unopposed motion.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS the United States' Unopposed Amended Motion to Enter Stipulation of Settlement. Dkt. No. 5. The Court hereby APPROVES the Proposed Stipulation of Settlement, Dkt. No. 2-1, and ADOPTS the Stipulation of Settlement in this case.

Dated this 15th day of October, 2024.

Lauren King
United States District Judge